**UNITED STATES of America, Appellee,**

v.

**Allen Ray JOHNSON, Appellant.**

**No. 79–6005.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 21, 1979.

Decided Dec. 28, 1979.

James R. Acker, Durham, N. C. (Thomas F. Loflin, III, Loflin, Loflin, Galloway, Leary & Acker, Durham, N. C., on brief), and Brenton D. Adams, Raleigh, N. C., for appellant.

Jack B. Crawley, Jr., Asst. U. S. Atty., Raleigh, N. C. (George M. Anderson, U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before BUTZNER, HALL, and PHILLIPS, Circuit Judges.

BUTZNER, Circuit Judge:

Allen Ray Johnson appeals the district court's denial of his motion under 28 U.S.C. § 2255 to set aside his federal sentence. Johnson was indicted in separate counts for three thefts of gasoline from an interstate pipeline system, tank, and storage facility in violation of 18 U.S.C. § 659. A jury found him guilty, and the court sentenced him to three consecutive prison terms of four years each and imposed a fine of $2500 for each offense. Upon his direct appeal, this court affirmed his conviction. *United States v. Williams*, 559 F.2d 1243 (4th Cir. 1977).

Johnson bases his present motion to vacate upon two grounds not previously raised: first, that the three offenses constituted a single, continuous transaction and a single offense under § 659, so that imposition of three separate convictions was statutorily impermissible and violated his fifth amendment protection against double jeopardy; and second, that his retained counsel's simultaneous representation of a co-defendant deprived him of the effective assistance of counsel guaranteed by the sixth amendment. We affirm the order denying relief.

I

On three occasions during the late night and early morning of November 11 and 12, 1975, Johnson participated in stealing gasoline from the City Service-Amoco pipeline terminal in Selma, North Carolina. The first withdrawal of gasoline from the termi-

nal's tanks took place at 9:32 p. m., the second at 12:59 a. m., the third at 4:19 a. m. Each time approximately 8,725 gallons were taken. On the morning of November 12, the terminal's employees discovered the withdrawals by reviewing the terminal's documentation system, which generates bills of lading that list the exact times and quantities of gasoline flowing through the pumps. Plastic cards controlled access to the pumps. The bills of lading showed the withdrawals to have been made through a set of "house cards" kept by the terminal and reported missing that morning.

Larry Williams, a co-defendant (who for clarity will be referred to as Larry), testified at the joint trial of all co-defendants that he, Johnson, Charles Lewis Williams, and Johnny Clayborn Parker cooperated that night to steal the gasoline. He described the following events.

Larry was working as a gasoline tank truck driver for Charles Williams, who owned a gasoline company. On November 11, Williams and Johnson solicited Larry's help in getting some "cheap gas." At Johnson's direction he drove the tank truck to Johnson's office and turned it over to a third person, later identified as Parker, who was familiar with the operation of the City Service—Amoco terminal. Parker drove the truck to the terminal and filled it by using the stolen house cards. He met Johnson and Larry at an exit off of the interstate highway. Larry resumed his position as driver, took the truck back to Williams's storage tanks and unloaded it. He then brought the truck back to Johnson's office. The thieves repeated their actions, and Larry again delivered the truck's load to Williams's storage tanks. After Parker had filled the truck a third time, Larry returned the truck to Williams's company. He deliv-

ered its load the next day to regular customers along his route.

Johnson asserts that these facts preclude on both statutory and constitutional grounds conviction under all three counts of the indictment. Although his contentions are closely related, we will consider them separately, discussing first the statutory claim and then the constitutional question.

## II

Johnson argues that the language of § 659 does not indicate clearly whether each act of taking gasoline from a pipeline system is chargeable as a separate offense.[1] Because of this ambiguity, he says, we must obey a "rule of lenity" and refrain from reading the statute to punish his conduct as multiple offenses. He also asserts that he and his co-defendants had a single, continuing criminal intent and a single, unified plan to steal as much gasoline as they could during the night. The fact that three trips were made he argues, was entirely fortuitous, solely a result of the size of Williams's truck. This single intent and plan, he claims, establishes only a single larceny.

Subject to constitutional limitations, primarily the proscription against cruel and unusual punishment, Congress can define behavior that will constitute a unit of prosecution. *Bell v. United States,* 349 U.S. 81, 82, 75 S.Ct. 620, 99 L.Ed. 905 (1955). The appropriate unit is determined by ascertaining congressional intent either from the text of the statute or its legislative history. If the statute prohibits continuous conduct, only one offense is committed even though the course of conduct persists over a long period of time. *E. g., United States v. Universal C.I.T. Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952) (viola-

---

1. 18 U.S.C. § 659 states:

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with

intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property; or

\* \* \* \* \* \*

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both . . . .

tion of Fair Labor Standards Act); *In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887) (illegal cohabitation). If the statute proscribes distinct and separate acts, multiple prosecutions may be maintained even though the acts were committed in furtherance of the same criminal enterprise. *E. g., Blockburger v. United States*, 284 U.S. 299, 301–03, 52 S.Ct. 180, 76 L.Ed. 306 (1932) [2] (multiple sales of a drug); *Badders v. United States*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916) (multiple mailings in violation of the Mail Fraud Act); *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915) (illegal destruction of several mailbags). When congressional intent concerning the unit of prosecution cannot be ascertained, lenity should prevail, and only one prosecution is permissible. *E. g., Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (injury to two officers by a single discharge of a firearm); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (violation of the Mann Act by single transportation of two women).

Congressional intention concerning the unit of prosecution for violation of 18 U.S.C. § 659 must be ascertained from the text of the statute, for the legislative history does not address this issue expressly. The text of the statute reveals no congressional intention to deviate from the familiar axiom that the words of the statute must be given their common, ordinary meaning. *See Burns v. Alcala*, 420 U.S. 575, 580–81, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975). Rather, its specific language points to a congressional intent to punish each distinct act.

▮ Section 659 punishes one who "steals, or unlawfully takes [or] carries away, . . . from any pipeline system . . . or from any tank or storage facility . . . with intent to convert to his own use any goods or chattels" which are part of an interstate shipment. Its purpose is to protect goods moving in interstate commerce from theft.[3] It has been interpreted to permit consecutive punishment for each distinct act of stealing when thieves commit multiple acts simultaneously as a part of a single criminal enterprise. *United States v. DeNormand*, 149 F.2d 622, 624–25 (2d Cir. 1945). In reaching this conclusion, *DeNormand* followed *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915), where the Court held that cutting each of several mailbags in a single foray against a railway postal car constituted separate offenses for which consecutive sentences could be imposed.

▮ The "rule of lenity" prescribed by *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), is inapplicable because no statutory ambiguity conceals the intent of Congress. The text of the statute clearly shows that it was not enacted simply to prohibit a course of conduct for which only one sentence would be appropriate. *Compare In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887) (course of conduct) *with Blockburger v. United States*, 284 U.S. 299, 301–03, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (multiple acts). In agreement with *DeNormand*, 149 F.2d at 624–25, we hold that each distinct criminal act provides a separate unit of prosecution for violations of § 659.

▮ Three times Johnson's confederate entered the property of the City Service—Amoco pipeline terminal and used the "house cards" to withdraw gasoline. Three times the tank truck left the terminal filled with stolen gasoline. Each withdrawal of gasoline from the system was a distinct act. Although gasoline is fungible, each tank truck load was a discrete unit or portion of the "goods or chattels" the statute protects. The only common denominator linking

---

2. Our citation to *Blockburger* refers to the first issue in that case—multiple acts violating a single statute. The second issue in *Blockburger*, 284 U.S. at 303–04, 52 S.Ct. 180, pertains to violations of two statutes by the same transaction, a question that is not raised in this appeal.

3. *See* S.Rep.No.1518, 89th Cong., 2d Sess. (1966); H.R.Rep.No.1791, 72d Cong., 2d Sess. (1932); S.Rep.No.814, 68th Cong., 2d Sess. (1913).

these distinct acts was the thieves' intent to steal as much gasoline as possible with the facilities they possessed in the time available to them. A criminal's single intent to commit multiple acts, however, affords no ground for disregarding congressional intent to make each distinct act a single unit of prosecution. *Blockburger v. United States*, 284 U.S. 299, 301–03, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915); *United States v. DeNormand*, 149 F.2d 622 (2d Cir. 1945). We therefore conclude that Johnson could be prosecuted under § 659 for three violations of the statute as charged in the indictment.

### III

Our conclusion, reached in Part II, that Congress authorized separate units of prosecution for each distinct act that violates § 659 effectively disposes of Johnson's constitutional plea of double jeopardy. The double jeopardy clause does not inhibit Congress's discretion to define units of prosecution. A discussion of the appropriate unit of prosecution under the Mann Act in *Bell v. United States*, 349 U.S. 81, 82–83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), illustrates this point:

> The punishment appropriate for the diverse federal offenses is a matter for the discretion of Congress, subject only to constitutional limitations, more particularly the Eighth Amendment. Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so?

Again, in *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), the Court explained this principle:[4]

> [T]he Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double

Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense . . . .

. . . Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . .

Consequently, Johnson's three consecutive sentences do not offend the double jeopardy clause of the fifth amendment.

### IV

Johnson and his co-defendant, Parker, retained the same law firm to represent them at trial. Johnson now claims that this joint representation raised conflicts that prevented his lawyers from representing him adequately.

The district court held an evidentiary hearing on Johnson's motion. It fully considered the evidence and made detailed findings of fact, concluding that the joint representation of Parker and Johnson caused no conflict that prejudiced Johnson's defense. Finding no error of fact or law, we affirm for reasons adequately stated by the district court.

*AFFIRMED.*

---

4. Although *Brown* dealt with another aspect of double jeopardy, successive prosecutions for the same transaction under different statutes, its general discussion of the double jeopardy clause is pertinent to the issue Johnson raises.