UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Lee ELLIOTT, a/k/a Biddie,
Defendant–Appellant.

No. 87–7712.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1988.

Decided June 20, 1988.

Glenn Bertrand Hester (Cooper & Associates, Atlanta, Ga., John S. Iorio, Greensboro, N.C., William D. Mallard, Mallard, Minor & Harris, Atlanta, Ga., on brief), for defendant-appellant.

David B. Smith, Asst. U.S. Atty. (Robert H. Edmunds, Jr., U.S. Atty., Benjamin H. White, Jr., Asst. U.S. Atty., Greensboro, N.C.; Becky M. Strickland, CLA, Paralegal Specialist on brief), for plaintiff-appellee.

Before RUSSELL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Robert Lee Elliott appeals the denial of his 28 U.S.C. § 2255 motion to set aside cumulative sentences imposed upon him for multiple violations of the federal narcotics laws arising out of two deliveries of the same type drug to the same buyer at the same place but ten days apart in time. Elliott contended that (1) the two deliveries represented a single, continuous offense for which only a single punishment could be imposed under the statute; (2) that even if the cumulative sentences were statutorily authorized, they constituted cruel and unusual punishment in violation of the eighth amendment; and (3) that he was denied effective assistance of counsel in violation of the sixth amendment. The district court rejected these claims and denied the motion. We affirm.

## I

On two occasions ten days apart, Elliott made deliveries of preludin, a non-narcotic controlled substance, to federal undercover agent Otis Rousseau. Both deliveries were made at Biddie's Tourist Home in Durham, North Carolina. The first took place on October 2, 1981, when Elliott gave Rousseau 200 tablets of preludin in exchange for $3,000 in cash. Several days later, Rousseau ordered an additional 200 tablets, which Elliott agreed to deliver to him on October 12, 1981. When Elliott arrived at Biddie's on October 12, intending to deliver the 200 tablets, Rousseau said he would like to increase his order to 400 tablets. Elliott agreed to oblige him and left Biddie's to get the additional tablets. He returned approximately 10 minutes later, accompanied by an associate. The associate handed Rousseau 400 tablets; in exchange, Rousseau gave Elliott approximately $6,000 in cash.

Elliott was arrested shortly thereafter and charged with five separate counts of violating the federal drug laws. Count I charged conspiracy to possess and distribute a controlled substance in violation of 21 U.S.C. §§ 841 and 846. The remaining four counts, which are the focus of this appeal, charged four separate violations of 21 U.S.C. § 841(a)(1), two based on the October 12th delivery and two on the October 2nd delivery. Count II charged possession with intent to distribute 400 preludin tablets on October 12, 1981; Count III charged actual distribution of the same 400 tablets at the same time and place. Count IV charged possession with intent to distribute of 200 preludin tablets on October 2, 1981; Count V charged actual distribution of the same 200 tablets at the same time and place.

Elliott was tried before a jury, which returned a verdict of guilty on all five counts. At the sentencing hearing, the district court ruled that each possession count merged with the corresponding distribution count for the purposes of sentencing, under the doctrine of *United States v. Atkinson*, 512 F.2d 1235 (4th Cir.1975). But the court

also ruled that Elliott was eligible for sentence enhancement under 21 U.S.C. § 841(b)(1)(B), because he had a prior conviction for a drug-related offense. Accordingly, the court sentenced Elliott to three consecutive ten-year terms of imprisonment—one for the conspiracy offense and one for each distribution offense—plus a total of $90,000 in fines.[1]

Following an unsuccessful direct appeal to this court, Elliott filed a Rule 35 motion for reduction of sentence in the district court. The district court denied the motion and this court affirmed. Elliott then filed this § 2255 motion to set aside his sentences as illegal, claiming (1) that the two deliveries represented a single, continuing distribution offense under § 841(a)(1), for which only a single punishment could be imposed; (2) that even if the cumulative punishments imposed were authorized by the statute, they were so grossly disproportionate to the crimes committed that they constituted cruel and unusual punishment, in violation of the eighth amendment; and (3) that his counsel's ineffective assistance at both trial and sentencing violated his sixth amendment rights. The district court, acting on the recommendation of a federal magistrate, dismissed the motion as without merit. This appeal followed.

## II

Elliott contends first that the district court erred in imposing separate punishments for the two distribution offenses. He argues that the two deliveries on which those offenses were based were part of a single criminal undertaking or transaction—the distribution of 600 tablets of preludin to a single buyer—and thus constitute a single "offense" under § 841(a)(1), for which only a single punishment may be imposed. To address this argument, we must determine the proper unit of prosecution under § 841(a)(1). *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952).

---

1. The district court also imposed two consecutive ten-year terms of special parole, one for

merged counts II and III and one for merged counts IV and V.

■ The allowable unit of prosecution for a federal offense is a matter within the discretion of Congress, subject only to constitutional limitations, primarily the eighth amendment's prohibition against cruel and unusual punishment. *Bell v. United States*, 349 U.S. 81, 82, 75 S.Ct. 620, 621, 99 L.Ed. 905 (1955). Our first task is therefore to determine, first from the text of § 841(a)(1) itself, or, failing that, from its legislative history and the overall statutory scheme of which it is a part, what Congress intended to serve as the unit of prosecution under that provision. *See United States v. Johnson*, 612 F.2d 843, 845–46 (4th Cir. 1979). If congressional intent concerning the unit of prosecution cannot be ascertained from these sources, we are obligated, as a matter of statutory construction, to resolve doubts in favor of lenity for the accused. *See Bell*, 349 U.S. at 83–84, 75 S.Ct. at 622.

We begin with the language of the statute itself. Section 841(a)(1) provides, in pertinent part, that it shall be unlawful "for any person knowingly or intentionally ... to ... distribute ... a controlled substance." 21 U.S.C. § 841(a)(1). On its face, "distribution" could of course be interpreted to refer to an overall course of conduct—e.g., being continuously engaged in the business of distributing drugs. But the term "distribute" is defined in § 802(11) as "to deliver," and the term "deliver" is in turn defined as the "actual, constructive, or attempted transfer of a controlled substance." *Id.* § 802(8). The more precise terms "deliver" and "transfer" suggest that Congress intended the statute to criminalize individual acts, rather than a continuous course of conduct.

Even as narrowed by these statutory definitions, however, the term "distribution" could still be read to encompass several physical acts of delivery that are closely related in time, space and purpose. Indeed, Elliott's argument is essentially that the two deliveries here, being made to the same purchaser at the same place and within a fairly short interval of time, constitute a single, continuing "distribution" of drugs. The mere fortuity that this distribution was accomplished by two separate physical acts of delivery ten days apart should not, he argues, increase the applicable penalty.

We cannot in fairness say that the statutory language itself specifically forecloses this broad transactional interpretation of the term "distribution." But our examination of the statute's history convinces us that Congress did not intend the unit of prosecution under § 841(a)(1) to be so broad. Section 841(a)(1) was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970. One of the principal purposes of that Act was to strengthen the penalties for drug trafficking, in order to deter individuals from engaging in that activity. H.R.Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 4566, 4575 ("The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive."). Section 841(a)(1) helped accomplish this goal by making illegal not only the actual sale of controlled substances, as had its predecessor, but also the participation in any aspect of the chain of their distribution—from manufacture to delivery. *See United States v. Pruitt*, 487 F.2d 1241, 1245 (8th Cir.1973). For this reason, several courts have concluded that Congress intended each distinct act of delivery to be a separately punishable offense under § 841(a)(1), even though it may have been only one of several such deliveries made in the course of consummating a single sales transaction. *See, e.g., United States v. Mehrmanesh*, 682 F.2d 1303, 1306–07 (9th Cir.1982) ("It seems unlikely that Congress intended to expand the scope of section 841(a)(1) to include all participants in the chain of distribution, while at the same time limit the scope of a single offense under the section only to those acts which are reasonably construed as constituting a distinct transaction between a buyer and seller."); *limited, United States v. Palafox*, 764 F.2d 558 (9th Cir.1985) (en banc). *See also United States v. Smith*, 757 F.2d 1161 (11th Cir.1985); *United States v. Weatherd*, 699 F.2d 959 (8th Cir.1983);

*United States v. McDonald,* 692 F.2d 376 (5th Cir.1982).

We agree that a purely transactional interpretation of the term "distribution" would be inconsistent with Congress' intent to expand the scope of the conduct punishable under § 841(a)(1) beyond the actual act of sale. Under such an approach, drug traffickers could avoid separate punishments for multiple deliveries to the same buyer over an extended period of time simply by characterizing them as separate installments of a single sales transaction. Had Congress intended such a result, it would simply have proscribed—chosen as the unit of prosecution—the "sale" of drugs, rather than their "delivery" and "transfer." We therefore conclude that each distinct act of delivery is a separate unit of prosecution under § 841(a)(1), even if it is only one of several such deliveries made in the course of an overall sales transaction.

■ There must, of course, be some ultimate limits on the government's ability to divide what is essentially a single act of delivery into several separately punishable offenses. Congress could not have intended that government agents could multiply the punishments available for a single intended delivery simply by asking that it be made in separately wrapped parcels that must be individually transferred into the recipient's hands. Multiple acts of physical delivery which, though technically discrete, occur at essentially the same time, in the same place, and with the involvement of the same participants must be considered a single "offense" for the purposes of punishment. *Cf. United States v. Palafox,* 764 F.2d 558, 561–63 (9th Cir.1985) (en banc) (violations of § 841(a) that occur at the same time, in the same place, and with the involvement of the same participants should support only a single punishment).

■ But that is not this case. The two acts of delivery here occurred ten days apart and involved different sets of participants. To treat them as a single offense under § 841(a)(1), simply because the same buyer and seller were involved in each, and because each took place in the same loca-tion, would undermine Congress' intent to deter ongoing drug trafficking by narrowly defining the unit of prosecution as each discrete act of delivery. We conclude that the cumulative punishments were properly imposed on the facts of this case.

### III

■ Elliott contends next that his total sentence of thirty years' imprisonment and $90,000 in fines violates the eighth amendment because it is "grossly disproportionate" to the crimes committed. Under *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), our review of the proportionality of a particular sentence must be guided by consideration of the following objective criteria: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3010. Application of these factors to the present case convinces us that Elliott's claim is without merit. Elliott is a repeat offender with a history of participation in the distribution of narcotics. The sentences he received were within the statutory limits, and he has made no showing that they are out of line with those received by other defendants convicted under the same statute. Under these circumstances, we cannot conclude that the sentences imposed are sufficiently disproportionate to the crimes committed to violate the eighth amendment.

We have considered Elliott's ineffective assistance of counsel claims carefully and found them to be without merit.

AFFIRMED.