896 F.2d 1368
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard C. BAILEY, a/k/a Speedy, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry V. FOX, Defendant-Appellant.
 Nos. 89-5148, 89-5174.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Dec. 28, 1989.
Decided: Feb. 13, 1990.
 
 John Laishley; Joseph M. Farrell, Jr., Hunt & Wilson, for appellants.
 Michael W. Carey, United States Attorney; Amy M. Lecocq, Assistant United States Attorney, for appellee.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Larry V. Fox and Leonard C. Bailey were named in a five count federal indictment charging each man with four counts of various drug offenses. Fox and Bailey were found guilty on all counts in which each was named. Bailey pleaded guilty, while Fox went to trial and was convicted by a jury. Bailey appeals his sentence. Fox raises three issues on appeal related to his trial. Because we find no merit in either appeal, we affirm the judgment of conviction in each case.
 
 
 2
 * Fox and Bailey became known to the police in Huntington, West Virginia, during a drug task force operation run by the Huntington police and the FBI. A paid informant contacted the police on June 20, 1988, with news of a cocaine purchase he had arranged in Huntington that day. The seller was to be Fox. This would be the first of three such purchases the informant would make over the next month from Fox, Bailey, or both men acting together. The informant bought cocaine totaling 22 grams from the men on June 20, June 23, and July 15.
 
 
 3
 Before each transaction, a police detective fitted the informant with a transmitter and microphone and provided him with enough cash to make a buy. The detective would monitor and record the transaction. Afterwards the informant would present the detective with the cocaine purchased and any left over cash. Fox and Bailey do not dispute that the recordings made were legal and quite incriminating.
 
 II
 
 4
 A Huntington jury convicted Fox on March 23, 1989, of possession of cocaine, conspiracy to possess, and aiding and abetting possession, all with the intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1) and 846, and 18 U.S.C. Sec. 2. He raises three issues challenging the legality of his conviction. We will address each briefly.
 
 
 5
 First, Fox contends that the trial court judge should not have admitted the testimony of FBI agent Turner, who spoke as a rebuttal witness for the government. Turner testified in order to establish that the voice attributed to Fox on the tapes of the drug purchases was in fact that of Fox. Earlier at trial, Fox had asserted that the recorded voice was not his. Apparently, he gave the government no warning that he would use this defense. The government did not anticipate calling Turner, who knew Fox's voice from this and past investigations, to testify. Turner's name was not on the witness list as a result and was not read to the jurors during the voir dire. Not surprisingly, Fox only discovered Turner would testify after challenging the identity of the voice at trial.
 
 
 6
 Fox now argues that the district court should have held a "voluntariness hearing" to determine the nature of his comments which were the basis for Turner's knowledge of his voice. Because Turner's testimony was tantamount to using Fox's past statements to incriminate him, Fox contends that the district court needed a voluntariness hearing in order to ascertain what comments, if any, were protected by the Fifth Amendment right against self-incrimination when uttered and whether Fox had waived the right voluntarily. Alternatively, Fox asserts that he lacked sufficient notice that Turner would testify to prepare an effective cross-examination. He considers this a diminution of his Sixth Amendment right to confront his accusers.
 
 
 7
 There is no merit in either argument. A voluntariness hearing was unnecessary because the Fifth Amendment does not protect the use of Fox's comments in order to identify his voice on a tape. United States v. Wade, 388 U.S. 218, 221-23 (1967). The surprise Fox finds regarding Turner's testimony was occasioned by his own unwillingness to disclose the nature of his defense to the government. Fox only revealed his defense once the trial began. The government gave as much notice about Turner as it could under the circumstances. The trial transcript reveals that the district court carefully considered the proposed testimony and limited it to the issue of voice identity.
 
 
 8
 Second, Fox challenges the admission into evidence of the cocaine purchased from him. He argues that the cocaine is inadmissible because the government failed to establish the chain of custody over the cocaine from the moment Fox sold it until the time of the trial. He finds two impermissible breaks in the chain. The first is the unexplained failure to testify by the police property officer who held the cocaine in an evidence locker. The second is the possibility that the informant who made the purchase might have altered the cocaine before turning it in to the police.
 
 
 9
 The chain of custody rule, however, requires only enough evidence "to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.1982). The district court heard unrefuted testimony from the informant, his supervising detective, and a lab analyst about the handling of the cocaine. The court acted well within its discretion in admitting the cocaine in light of this testimony.
 
 
 10
 Finally, Fox contends that he was illegally convicted of multiple crimes arising out of a single drug transaction. On June 20, 1988, Fox agreed to sell the informant a quarter of an ounce of cocaine. He personally delivered most of the amount, but, because what he had on hand was insufficient, he promised to have Bailey deliver the balance later. True to Fox's word, Bailey brought the rest at the appointed time. Fox was convicted on count two of the indictment for the first delivery. He was convicted on count three for causing the second. He views this as punishment for the same conduct twice because the two deliveries were parts of a single sale.
 
 
 11
 This argument fails because the statute of conviction for these charges, 21 U.S.C. Sec. 841(a)(1), prohibits the "distribut[ion]" of cocaine. Distribution in this context means "delivery" and not "sale." See 21 U.S.C. Secs. 802(8) and (11). Fox delivered or caused delivery of cocaine on two occasions. It was quite proper to charge and convict him of these two distinct crimes. United States v. Elliott, 849 F.2d 886, 889-90 (4th Cir.1988); United States v. Morris, 836 F.2d 1371, 1374 (D.C.Cir.1988).
 
 III
 
 12
 Bailey pleaded guilty on March 21, 1989, to charges of possession of cocaine, conspiracy to possess, and aiding and abetting possession, all with the intent to distribute, in violation of 21 U.S.C. Secs. 841(a)(1) and 846, and 18 U.S.C. Sec. 2. The court ordered a presentence report for Bailey, which recommended a sentencing range of 10-16 months under the guidelines promulgated by the United States Sentencing Commission. No one objected to the report's findings. On May 8, 1989, the district court held a sentencing hearing. The court ordered Bailey confined for 16 months with 5 years of supervised release to follow. Bailey had already spent over six months in jail. The court refused to credit Bailey with the six months, explaining: "The Court almost departed [from the guidelines range] and imposed a considerably greater sentence, Mr. Bailey, but the Court will not do so in this case.... I will let what time you have spent in jail take care of that."
 
 
 13
 Soon after the hearing, Bailey moved for a sentence correction, claiming that his sentence was illegal because the court did not credit him with the six months already served. A second hearing was held on May 19, 1989. The district court granted Bailey's motion because it recognized that denying the credit violated 18 U.S.C. Sec. 3585. The court lengthened Bailey's sentence by six months and counted the presentencing time served. By doing so, the district court explicitly imposed the upward departure contemplated by its actions at the first hearing.
 
 
 14
 Bailey now challenges the upward departure on three grounds: (1) he was not given adequate notice of the departure, (2) the reason for the departure was not stated clearly enough by the district court, and (3) the departure was unreasonable.
 
 
 15
 The district court afforded Bailey ample notice of its intention to depart from the guidelines range. The court stated at the first sentencing hearing that it would stay within the guidelines range only because Bailey would not receive credit for his time in jail. At the second hearing, the court recounted its reasons and then gave Bailey an opportunity to speak before handing down a corrected sentence. Federal Rule of Criminal Procedure 32(a)(1), relied on by Bailey, does not require more. Cf. United States v. Nuno-Para, 877 F.2d 1409, 1415 n. 4 (9th Cir.1989).
 
 
 16
 We find no infirmity in the court's pronouncement of its reason for departure. In both hearings, the court precisely stated the basis for its decision. It considered the criminal history category assigned Bailey in the presentence report too low because he had two prior drug offense convictions. The court noted that he nearly fit a higher criminal history category. If he had, the recommended sentencing range would have been in excess of 200 months.
 
 
 17
 Moreover, the justification given for departure was entirely reasonable. The guidelines envision that a court "may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure." United States Sentencing Commission, Guidelines Manual, Sec. 4A1.3 (Nov.1989). Under the standard of review for departures, we find no error. See 18 U.S.C. Sec. 3742(e)(3); United States v. Summers, No. 89-5116 (4th Cir. Jan. 2, 1990).
 
 
 18
 AFFIRMED.