**Kenneth NOTARO, Petitioner,**

v.

**Parker EVATT, Commissioner, South Carolina Department of Corrections; and the Attorney General of South Carolina, Respondents.**

Civ. A. No. 3:92–206–19AH.

United States District Court, D. South Carolina, Columbia Division.

Sept. 30, 1993.

M.M. Weinberg, Weinberg, Brown & McDougall, Sumter, SC, for petitioner.

Donald J. Zelenka, Asst. Atty. Gen. for the State of S.C., Columbia, SC, for respondents.

### ORDER

SHEDD, District Judge.

Petitioner, an inmate in the custody of the South Carolina Department of Corrections, seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his consecutive sentences for three counts of second degree lynching under S.C.Code Ann. § 16–3–220 violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. This matter is now before the Court on respondents' motion for summary judgment, to which petitioner, through his counsel, has filed a memorandum in opposition. After carefully reviewing the record and the controlling legal principles, the Court concludes that petitioner's sentences are not violative of the Double Jeopardy Clause and, therefore, the motion should be granted.[1]

I

The facts of this case are not in dispute. On March 11, 1989, petitioner and Damon Lopez, fired at least six gunshots into a vehicle occupied by Jeff Bryson, Elaina Bryson, Amy Thompson, and Dale Hammond.

---

1. This matter was previously referred to United States magistrate Judge Bristow R. Marchant for pretrial proceedings. For administrative reasons, the Court hereby **WITHDRAWS** the reference.

This incident occurred during a 9.1 mile high-speed chase in Horry County, South Carolina. As a result of this incident, Ms. Bryson, Ms. Thompson, and Mr. Hammond were injured. Thereafter, petitioner and Mr. Lopez were indicted for three counts of second degree lynching or, in the alternative, four counts of assault and battery with intent to kill, and possession of a firearm during the commission of a violent crime.[2] On May 22, 1989, petitioner pled guilty to the second degree lynching charges and was sentenced for a period of ten years imprisonment on count one, twenty years imprisonment consecutive on count two, and ten years imprisonment consecutive on count three. The sentences on counts two and three were suspended during his term of probation, which was five years.

## II

Petitioner claims that the imposition of the consecutive sentences based on his plea to the three counts of second degree lynching constitutes a violation of the Double Jeopardy Clause. In their motion for summary judgment, respondents contend alternatively that: (1) petitioner is procedurally barred under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), from raising this claim; and (2) petitioner's consecutive sentences are not violative of the double jeopardy clause.[3] The Court need not consider whether petitioner is barred from raising this claim because, as set forth below, his double jeopardy claim is without merit.

## A.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." *U.S. Const.,* amend. V. The Supreme Court has determined that this clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Unit-*

ed States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Petitioner's claim is based on the third of these protections.

On a claim of multiple punishments, "the Double Jeopardy Clause does no more than prevent the sentencing court from proscribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). Therefore, in considering petitioner's claim:

> [T]he first inquiry must be directed to the question of legislative intention as to whether a continuing criminal episode should be treated as a single offense for which only one punishment may be imposed or as two or more " 'units of prosecution' based upon particular factors of time or other circumstances dividing the whole into discrete parts."

*Ashford v. Edwards,* 780 F.2d 405, 406 (4th Cir.1985) (citations omitted). In *United States v. Johnson,* 612 F.2d 843 (4th Cir. 1979), the Fourth Circuit summarized the applicable standards for determining what constitutes a "unit of prosecution":

> Subject to constitutional limitations, primarily the proscription against cruel and unusual punishment, [the legislature] can define behavior that will constitute a unit of prosecution. The appropriate unit is determined by ascertaining [legislative] intent either from the text of the statute or its legislative history. If the statute prohibits continuous conduct, only one offense is committed even though the course of conduct persists over a long period of time. If the statute proscribes distinct and separate acts, multiple prosecutions may be maintained even though the acts were committed in furtherance of the same criminal enterprise. When [legislative] intent concerning the unit of prosecution cannot be ascertained, lenity should pre-

2. The victims in the respective second degree lynching counts were Ms. Thompson (count one), Ms. Bryson (count two), and Mr. Hammond (count three).

3. For purposes of habeas review, respondents concede that this issue is fully exhausted by virtue of petitioner's appeal in state court.

vail, and only one prosecution is permissible.

612 F.2d at 845–46.

### B.

As noted, petitioner pled guilty to three counts of second degree lynching under S.C.Code Ann. § 16–3–220, which provides:

Any act of violence inflicted by a mob upon the body of another person and from which death does not result shall constitute the crime of lynching in the second degree and shall be a felony. Any person found guilty of lynching in the second degree shall be confined at hard labor in the State Penitentiary for a term not exceeding twenty years nor less than three years, at the discretion of the presiding judge.

Petitioner argues that the three counts of second degree lynching to which he pled guilty arose out of one occurrence and one single act—that being the act of shooting at a car in which more than one person was riding and in which more than one person was injured—and, because of this, his consecutive sentences result in multiple punishments for the same crime in violation of the Double Jeopardy Clause. In support of his position, petitioner relies on the opinion in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the Supreme Court held in part:

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.

The *Blockburger* test cited by petitioner "applies to a defendant who committed one act which violates two different and separate statutes or provisions." *Tuggle v. State*, 733 P.2d 610, 611 (Wyo.1987). In analyzing petitioner's double jeopardy claim, it is important to recognize that petitioner pled guilty to three separate violations of one statute, rather than to violations of separate statutes. Under this circumstance, the *Blockburger* Court set forth the test as being " 'whether the individual acts are prohibited, or the course of the action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty.' " 284 U.S. at 302, 52 S.Ct. at 181 (citation omitted).[4]

Although there is no legislative history or case law interpreting Section 16–3–220, the Court concludes that the plain language of the statute compels the conclusion that petitioner's argument is without merit. Under Section 16–3–220, the elements of the crime of lynching in the second degree are: (1) an act of violence, (2) inflicted by a mob, (3) upon the body of another, (4) which does not result in death.[5] The statute, being codified in Chapter 3 of Title 16 of the Code of Laws of South Carolina, proscribes "Offenses Against The Person." The gravamen of the offense is the infliction of violence by a mob on "another person." Petitioner, by firing his gun at least three times and injuring three other persons, committed three separate violations of Section 16–3–220, for which the plain text of the statute indicates the General Assembly of South Carolina has authorized multiple punishments.

This conclusion is supported by several cases from other jurisdictions in which courts have disposed of similar double jeopardy claims. For example, in *Kelsoe v. Commonwealth*, 226 Va. 197, 308 S.E.2d 104 (1983), the Supreme Court of Virginia found that the defendant's multiple punishments for drawing and pointing a weapon simultaneously at three persons was not a violation of the Double Jeopardy Clause. The statute involved in *Kelsoe* made it unlawful " 'to point or brandish any firearm ... in such a manner as to reasonably induce fear in the mind of the victim.' " 308 S.E.2d at 104 (citation omitted). The court found that the legisla-

---

4. The Fourth Circuit, in *Johnson*, recognized that the *Blockburger* Court set forth two tests: the first being for "multiple acts violating a single statute" and the second being for "violations of two statutes by the same transaction." 612 F.2d at 846 n. 2.

5. Petitioner was unquestionably part of a "mob" as that term is defined in Section 16–3–230.

ture "clearly proscribed an offense against the person," and that the "[t]he gravamen of the offense is the inducement of fear in another." *Id.* The court therefore concluded that "when the defendant frightened the three men by pointing his weapon, he committed three separate crimes ... [for which] the trial court was authorized to impose multiple punishments...." *Id.*

Similarly, in *Tuggle*, the Supreme Court of Wyoming rejected a double jeopardy claim brought by a defendant who received consecutive sentences for two counts of aggravated assault and battery involving two separate victims. The defendant had pled guilty to drawing his gun on the first victim and, upon being confronted by the second victim, pointing it at the second victim. The statute at issue in *Tuggle* provided in pertinent part that " '[a] person is guilty of aggravated assault and battery if he .... [t]hreatens to use a drawn deadly weapon on another unless reasonably necessary in defense....' " 733 P.2d at 610 n. 1 (citation omitted). The court rejected the defendant's "single transaction" theory and found that under the *Blockburger* test which deals with multiple violations of one statute, the facts needed to support the elements of each assault would differ, since different victims were involved; thus "under [this] *Blockburger* test, 'each [act] is punishable separately,' because it is the act itself that is prohibited." 733 P.2d at 612 (citation omitted). The court further found that the use of the word "another" in referring to the victim of the crime indicates that the legislature's "obvious intent" was to protect each individual, since "another" as used in the statute is "a singular term and thus means each time 'another' is affected by said crime,

it is a separate offense." *Id. See also Ashford,* 780 F.2d at 406–07 (rejecting double jeopardy claim where the defendant was sentenced for two counts of attempted armed robbery resulting from one transaction that involved two victims); *United States v. Williams,* 446 F.2d 1115, 1115–16 (5th Cir. 1971) (rejecting double jeopardy claim where the defendant was sentenced for four counts of assault on a federal officer resulting from his throwing of 15–20 rocks at four officers).[6]

Petitioner seems to argue that once he fired one gunshot and injured one victim, he thereafter could continue to fire his weapon at anyone else, in the car or otherwise, with impunity. Aside from the clear text of Section 16–3–220, the Court cannot believe that this was the intent of the General Assembly in enacting this statute. As the court in *Tuggle* stated, " 'there is no indication that the defendant can get a bargain rate if he assaults a group of human beings.' " 733 P.2d at 612 (citation omitted).[7]

### III

Based on the foregoing, the Court hereby **ORDERS** on this the 29th day of September, 1993, at Columbia, South Carolina, that respondents' motion for summary judgment be **GRANTED.**

---

**6.** In *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958), a case in which the defendant was convicted and sentenced for two counts of assault on a federal officer resulting from one gunshot that wounded two officers, the Supreme Court interpreted the statute at issue in *Williams* and held that the single discharge of a shotgun which injured two officers would only constitute one offense of assault. However, the Supreme Court stated that '[i]n view of the trial judge's recollection that 'more than one shot was fired into the car in which the officers were riding ...' we cannot say that it is impossible that petitioner was properly convicted of more than one offense, even under

the principles which govern here." *Id.* at 178 n. 6, 79 S.Ct. at 214 n. 6. The Supreme Court therefore remanded the case for a factual determination as to the nature of the offense.

**7.** The crime of lynching in the first degree is defined as "[a]ny act of violence inflicted by a mob upon the body of another person which results in the death of the person...." S.C.Code Ann. § 16–3–210. Under petitioner's theory, if the victims in this case had died, he could only be sentenced for one death rather than three. The Court doubts that such a construction was intended by the General Assembly.