**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 95-5541

WILL ESTER CAMPBELL,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, District Judge.
(CR-94-115-1-R)

Submitted: May 28, 1996

Decided: January 27, 1997

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

James R. Cromwell, VOGEL & CROMWELL, L.L.C., Roanoke, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney,
Jennie M. Waering, Assistant United States Attorney, Thomas E.
Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Will Ester Campbell appeals his conviction for aiding and abetting food stamp fraud, 18 U.S.C.A. § 2024(b) (West Supp. 1996), 18 U.S.C. § 2 (1988), and crack distribution, 21 U.S.C.A. § 841 (West 1981 & Supp. 1996), 18 U.S.C. § 2 on various grounds. He also seeks to appeal the district court's decision not to depart downward under USSG § 4A1.3.[1] We affirm in part and dismiss in part.

I.

On May 28, 1992, United States Department of Agriculture Special Agents Kevin Harrell and Shane Gilmore were conducting an investigation into food stamp fraud in Roanoke, Virginia, with Lorenzo Titus Banks, a confidential informant. Will Campbell was one of the targets of the investigation. While Harrell was driving around with Banks and Gilmore, Banks saw Campbell driving ahead of them. Banks approached Campbell while both cars were stopped at a red light and told Campbell that his cousin (Harrell) wanted to exchange $200 worth of food stamps for crack. Banks testified that Campbell responded positively, saying that he was going to have a barbecue, and told Banks to follow him to his house.

When they arrived at Campbell's house, Campbell went inside. Terry Washington, who had been a passenger in Campbell's car, got in Harrell's car with the agents and Banks and accepted the food stamps with the comment that they could use the food stamps because they were planning to have a barbecue or cookout. After waiting about five minutes, Harrell and Banks went up to the door of the house and knocked. Washington let Banks in, but left Harrell standing

_____

[1] United States Sentencing Commission, Guidelines Manual (Nov. 1994).

2

on the porch. Banks testified that Washington went upstairs while he waited at the bottom of the stairs for a few minutes. He said that, while he waited, he heard Campbell say, "Hurry up," and heard the sound of a vase being picked up. Shortly thereafter, Washington returned, wearing a turtleneck turned up to cover his face, and gave Banks 1.2 grams of crack.

As Banks exited with the crack, he said to Washington, "This is Will's stuff, right," or "This is Will Campbell's drugs." Washington replied, "Shut up, shut up. You know you don't supposed to say that sh__." Both Banks and Harrell heard the statement.

In September 1994, Campbell was charged with aiding and abetting in food stamp fraud and crack distribution. Banks testified at Campbell's trial that he knew that Campbell kept crack in a tree stand vase because he had been present before when Campbell sold crack to his uncle. Defense counsel objected to this statement "for the record" and the district court overruled the objection. The district court instructed the jury that they could not consider the evidence of Campbell's prior distributions in determining his guilt, but could consider it "as bearing on the question of whether the defendant intended to participate in Washington's unlawful conduct" if they were convinced beyond a reasonable doubt of Campbell's guilt based on other evidence (J.A. at 88).

Washington testified in Campbell's defense that when Banks approached Campbell's car at the red light, Campbell told Banks he did not have any drugs. He said Banks followed them to Campbell's house of his own volition and called him to the car while Campbell went inside. He said he did not remember sitting in the agent's car and went inside the house without agreeing to exchange crack for food stamps. Washington testified that Banks knocked on the door half an hour later and pressed him for drugs, so he decided to give Banks a small amount of crack in exchange for the food stamps without letting Campbell know about the transaction.

II.

A.

A jury convicted Campbell of both counts against him. He now appeals contending first that the evidence was insufficient to support

3

the convictions. A conviction should be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to the facts sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Here, the government had to prove that Campbell acquired or aided and abetted the acquisition of food stamps in a manner unauthorized by the federal statute or regulations, United States v. Liparota, 471 U.S. 419, 433 (1985), and that he knowingly and intentionally distributed crack, United States v. Elliott, 849 F.2d 886, 889 (4th Cir. 1988), or aided and abetted Washington in doing so.

In convicting Campbell, the jury chose to believe the testimony of Banks rather than that of Washington, a decision not reviewable on appeal. United States v. Murphy, 35 F.3d 143, 145 (4th Cir.), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3563 (U.S. Jan. 23, 1995) (No. 94-7337). Given that the jury found Banks credible, the evidence was sufficient to convict Campbell. Banks testified that he asked Campbell to supply the crack and that Campbell responded positively by mentioning that he was going to have a barbecue and telling Banks to follow him to his house. Further, Banks testified that, in the house, he heard Campbell tell Washington to hurry, and that the sound of the vase being moved indicated to him that crack was being removed from a hiding place which he had seen Campbell use for crack in the past.

B.

Campbell next maintains that the district court abused its discretion by admitting Banks's testimony that he had witnessed Campbell distribute crack in the past. Evidence of a defendant's prior bad acts is admissible if it is relevant to an issue other than character, is necessary to show an essential part of the crime or its context, and is reliable. The district court's decision to admit the evidence is reviewed for abuse of discretion, and substantial prejudice must be shown to warrant exclusion. United States v. Powers, 59 F.3d 1460, 1464-65 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3485 (U.S. Jan. 16, 1996) (No. 95-6391) (citations omitted).

4

Banks's testimony that he had previously seen Campbell distribute crack which he kept in the tree stand vase was relevant to Campbell's identity as a participant in the distribution on May 18, 1992, and to his intent to aid and abet Washington in acquiring the food stamps in exchange for crack. The testimony was necessary because neither Banks nor the agents actually saw Campbell handle the crack or instruct Washington to make the exchange. The evidence was reliable because Banks personally observed Campbell make the previous distribution and recognized the sound of the vase being moved just before he received the crack from Washington.

Campbell argues that the testimony was unfairly prejudicial. However, exclusion of evidence on this basis is required only when "the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." Powers, 59 F.3d at 1467 (quoting United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980)). No such danger appears here. Campbell also argues that Banks's testimony that he heard the vase being moved on the floor above him was incredible. He did not make this argument in the district court and we do not find Banks's testimony inherently unbelievable. Therefore, the district court did not abuse its discretion in permitting him to testify that he witnessed a prior similar distribution by Campbell.

C.

Campbell also contests the district court's decision to permit testimony about Washington's statement to Banks that he was not supposed to say who supplied the crack. Campbell argues that the statement should have been excluded as hearsay because it was not made in furtherance of or in the course of a conspiracy. See Fed. R. Evid. 801(d)(2)(E). He points out that the distribution had been completed when Washington made the statement. The district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Moore, 27 F.3d 969, 974 (4th Cir.), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3348 (U.S. Oct. 31, 1994) (No. 94-6283). Assuming that the objection was on hearsay grounds,[2] we find that the district court

_____

[2] Campbell's attorney objected to Harrell's testimony about Washington's admonition to Banks "for the record," but did not state the grounds

did not abuse its discretion in overruling the objection because the statement was made in the course of the conspiracy. Although the exchange of crack for food stamps had been completed by the time Washington made the statement, he was still attempting to conceal from Harrell, as far as possible, his own identity and the source of the crack.

D.

Finally, Campbell contests the district court's decision not to depart below the sentencing guideline range. Having failed to persuade the district court that the criminal history points he accumulated between the date of the instant offense and his sentencing should not be counted, Campbell sought a departure under USSG§ 4A1.3. He argued that the government's delay in prosecuting him allowed him to commit the additional offenses and incur the additional criminal history points, thus increasing his criminal history category from V to VI. The district court declined to depart on this ground. A district court's discretionary decision not to depart is not reviewable unless it is based on a mistaken belief that the court lacks the legal authority to depart. United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 498 U.S. 819 (1990). Campbell does not suggest that the district court misunderstood its authority to depart and the record does not reveal that it did. Consequently, the court's discretionary decision is not reviewable.

III.

We therefore affirm Campbell's conviction and dismiss his appeal of the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately pres-

_____

for the objection. The objection was summarily overruled. There was no objection when Banks later testified about the statement. In fact, the only discussion of the testimony about this statement occurred at a pretrial motions hearing in which Campbell requested that the indictment be dismissed because of the two-year delay in charging him. Defense counsel argued that Campbell would not remember the events which took place on the date of the alleged offense two years earlier.

6

ented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, DISMISSED IN PART

7