**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles Edward McDONALD,**
**Defendant-Appellant.**

**No. 82–3132**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1982.

Certiorari Denied April 4, 1983.
See 103 S.Ct. 1531.

Moore & Moore, Johnny C. Moore, Baton Rouge, La., for defendant-appellant.

Standford O. Bardwell, Jr., U.S. Atty., Shelly C. Zwick, Asst. U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Appeal from the United States District Court for the Middle District of Louisiana.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

REAVLEY, Circuit Judge:

Charles McDonald made two illegal deliveries of drugs to an undercover agent, and pled guilty to two counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a). The question now is whether two separate physical deliveries of a controlled substance on two different days, all part of a single financial scheme involving the same buyer and sellers, constitute separate criminal acts subject to consecutive sentences. We hold that under the applicable statute the unit of prosecution is a delivery, and affirm the consecutive sentences.

I

In June of 1980 Charles McDonald involved himself in a scheme with four code-

fendants and a federal undercover agent to exchange an enormous quantity of methaqualone ("quaalude") tablets for cash and unregistered firearms. On June 23, 1980 Special Agent Lloyd Grafton of the Bureau of Alcohol, Tobacco, and Firearms, held a telephone conversation with codefendant Virginia Dawn Kimes in which Kimes offered to purchase 200 machine guns from Grafton for a buyer later identified as Charles McDonald. On July 13, 1980, McDonald agreed in a telephone conversation with Grafton to exchange half a million quaaludes for machine guns worth $100,000 and $350,000 in cash.

On July 15 McDonald told Grafton that one of his partners had sold most of the half million quaaludes, and that he now had on hand between fifty and one hundred thousand of the tablets. He indicated that he would try to obtain the additional quaaludes or cocaine to make up the difference in price. On July 16, McDonald agreed to inspect the firearms and deliver 60,000 quaaludes to Grafton on the following day.

On July 17, McDonald and codefendant Eddie Gantt delivered approximately 53,775 quaalude tablets to Grafton in Baton Rouge, Louisiana. At that time McDonald stated that he would be able to obtain another 200,000 quaaludes in Florida. McDonald and Gantt inspected the weapons, and Grafton then displayed $350,000 in cash and an additional machine gun which were to go to Mr. McDonald upon delivery of the additional quaaludes.

McDonald and codefendants Sharon Magee, Edward Gantt and Joseph Krohn then traveled to Florida. Gantt and Krohn returned to Baton Rouge with approximately 212,011 quaaludes in the trunk of their rental car. McDonald and Magee flew from Florida to New Orleans. McDonald telephoned Grafton and told him that either Gantt or Krohn would come to his room at the Monarch Inn in Baton Rouge and complete the exchange. Krohn delivered the 212,011 quaaludes to Grafton on July 21, 1980.

On July 31, 1980, appellant McDonald and four others were variously charged in a nine-count grand jury indictment. McDonald agreed to plead guilty to the first three counts. Count I charged conspiracy to receive and possess unregistered firearms and conspiracy to distribute and to possess with intent to distribute a Schedule II controlled substance in violation of 18 U.S.C. § 371. Count II charged distribution of and possession with intent to distribute 53,775 quaalude tablets on July 17, 1980, in violation of 21 U.S.C. § 841(a)(1). Count III charged distribution of and possession with intent to distribute 212,011 quaalude tablets on July 21, 1980, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to imprisonment for five years and to pay a $10,000 fine on each of the three counts, each sentence to run consecutively.

## II

The defendant concedes that conspiracy to commit a crime charged in count I and the commission of the substantive offense charged in counts II and III may be punished by consecutive sentences. However, he maintains that he cannot properly be convicted and consecutively sentenced to two prison terms for the two deliveries of quaaludes charged in counts II and III. He argues that such a construction of the relevant drug statutes would be inconsistent with congressional intent and would violate the double jeopardy clause of the Constitution.

■ We begin by noting that the double jeopardy clause imposes no restraints on the power of Congress to define the allowable unit of prosecution and punishment where all the charges are brought in one suit. *United States v. Rodriguez*, 612 F.2d 906, 924 (5th Cir. 1980) (en banc), *affirmed sub nom. Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Our sole question in this case is whether Congress intended to provide for multiple punishments. *United States v. Hawkins*, 658 F.2d 279, 286 (5th Cir. 1981); *United States v. Davis*, 656 F.2d 153, 157 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). The language and history of the Comprehensive

Drug Abuse Prevention and Control Act of 1970 indicate that the consecutive punishments imposed in this case were proper.

The appellant was convicted of violating 21 U.S.C. § 841(a)(1), which states that "it shall be unlawful for any person knowingly or intentionally to ... distribute ... a controlled substance." "Distribute" is defined under the Act as meaning "to deliver (other than by administering or dispensing) a controlled substance." 21 U.S.C. § 802(11). "Deliver" is defined to mean "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." *Id.* § 802(8). These relatively simple and unambiguous statutes indicate that Congress has chosen the unit of prosecution to be an unauthorized distribution or delivery, as those terms are commonly used and understood. There is no doubt that McDonald committed two criminal acts.

In spite of the clear wording of these statutes, appellant argues that the two distributions in this case should be treated as one because they were motivated by a single financial scheme. A similar argument was rejected in *United States v. Thompson,* 624 F.2d 740 (5th Cir. 1980). There we upheld the conviction of a physician on three separate counts of dispensing a controlled substance, in violation of 21 U.S.C. § 841(a)(1), for writing three separate prescriptions to the same undercover investigator at the same time and in exchange for the same payment.

The appellant argues that even if he committed separate offenses he should not be subjected to consecutive sentences, relying on *United States v. Ferguson,* 498 F.2d 1001 (D.C.Cir.), *cert. denied,* 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 145 (1974). A passage from that opinion by the District of Columbia Circuit states:

Finally, on the point of sentencing, we do find that appellant has a valid objection. There clearly was intended to be one sale of narcotics; however, due to some misunderstanding, the full quantity of narcotics purchased was not delivered on May 19, 1969. Thus, the May 20, 1969, exchange, we believe, should be treated as part and parcel of the May 19 sale, and concurrent sentences should be imposed rather than consecutive ones under count one of each indictment.

*Id.* at 1009. It is enough to say that Ferguson had been charged with an illegal *sale* of narcotics under 26 U.S.C. § 4705(a), a statute which has since been repealed. Here the conviction was under a statute prohibiting the *distribution* of a controlled substance, and, as explained above, there were clearly two distributions.

The appellant refers us to a number of cases in which appellate courts have struck down multiple sentences imposed on drug offenders. We do not find these cases controlling since they involved situations where separate sentences were imposed for a single act or conspiracy.[1] In contrast, this case involves two distinct, physical acts,

---

1. In *United States v. Gomez,* 593 F.2d 210 (3d Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979), the Third Circuit held that a defendant could be separately charged and convicted, but could not be separately sentenced, under counts for possession with intent to distribute cocaine and actual distribution of the same cocaine, where both convictions arose out of the same criminal undertaking consisting of a single distribution transaction. "As we have interpreted congressional intent, it is permissible to impose separate sentences only when the violations charged and proved arise out of two discrete transactions." *Id.* at 215. The narrow holding of *United States v. Hernandez,* 591 F.2d 1019 (5th Cir. 1979) (en banc), is that a defendant cannot receive consecutive sentences for possession with intent to distribute and distribu-

tion of heroin where the defendant's conduct consisted of a single transaction during which the defendant sold heroin to undercover agents, and where the same evidence of sale was relied upon to prove both charges. *But see infra* note 8. "Obviously, our opinion does not concern the situation where there is separate evidence of possession with intent to distribute and evidence of distribution in one or more different transactions." *Id.* at 1022. Appellant also refers us to *Launius v. United States,* 575 F.2d 770 (9th Cir. 1978). There the Ninth Circuit held that a defendant could not be consecutively sentenced for conspiracy to smuggle heroin and conspiracy to smuggle amphetamines where "[i]t appeared on the face of the indictment that but one agreement was involved and hence but one conspiracy." *Id.* at 771.

both of which violated the law, for which consecutive sentences were imposed. This court has frequently upheld multiple convictions and separate sentences even where the defendant arguably engaged in but a single act, agreement or course of conduct. We have upheld separate sentences for: importation of cocaine and possession of the same with intent to distribute;[2] simultaneous possession of two different drugs with intent to distribute;[3] conspiracy to import marijuana and conspiracy to distribute the same;[4] conspiracy to import and attempt to import the same marijuana;[5] manufacturing a drug and possessing it with intent to distribute;[6] conspiracy to import heroin and importing it;[7] distributing a drug and possessing the same drug with intent to distribute it;[8] and conspiracy to possess marijuana and possessing it with intent to distribute.[9]

 Appellant urges the court to apply the "rule of lenity" which provides that courts should not interpret criminal statutes so as to increase or pyramid penalties when such an interpretation is based only on guesswork as to what Congress intended. The rule is inapplicable here for several reasons. First, the Supreme Court precedents developing the rule as it applies to multiple sentencing involved situations where a single, uninterrupted criminal act led to multiple convictions and sentences.[10] In this case we have two distinct physical acts occurring on different days, both of which were illegal, on which the two convictions were based. Second, the rule of lenity is to be applied only if, after reviewing all sources of legislative intent, the statute remains truly ambiguous. *United States v. Davis,* 656 F.2d 153, 158 (5th Cir. 1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). This statutory language clearly defines the unit of prosecution to be the act of delivering controlled substances into the hands of another, and two such deliveries took place here. There is no ambiguity.

Moreover, if we look beyond the statutory provisions, we find a clear intent of

---

**2.** *United States v. Colmenares-Hernandez,* 659 F.2d 39 (5th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 116 (1981).

**3.** *United States v. Davis,* 656 F.2d 153 (5th Cir. 1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982).

**4.** *United States v. Rodriguez,* 612 F.2d 906 (5th Cir. 1980) (en banc), *affirmed sub nom. Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). *See also United States v. Pool,* 660 F.2d 547 (5th Cir. 1981) (upholding consecutive sentences for conspiracy to import and conspiracy to possess with intent to distribute marijuana).

**5.** *United States v. Anderson,* 651 F.2d 375 (5th Cir. 1981).

**6.** *United States v. Goodman,* 605 F.2d 870 (5th Cir. 1979). *See also United States v. Lewis,* 621 F.2d 1382 (5th Cir. 1980), *cert. denied,* 450 U.S. 935, 101 S.Ct. 1400, 67 L.Ed.2d 370 (1981) (consecutive sentences upheld for conspiracy to manufacture in violation of 21 U.S.C. § 846, manufacture in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1)).

**7.** *United States v. Pearson,* 655 F.2d 569 (5th Cir. 1981), *affirmed on rehearing,* 667 F.2d 12 (1982).

**8.** *United States v. Berkowitz,* 662 F.2d 1127 (5th Cir. 1981); *United States v. Foundas,* 610 F.2d 298 (5th Cir. 1980). Both cases distinguish *Hernandez, supra* note 1.

**9.** *United States v. Ocanas,* 628 F.2d 353 (5th Cir. 1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).

**10.** *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) held that the crime of rape is a lesser included offense of the crime of felony murder in the perpetration of rape, since the latter crime included all of the elements of the former, and that consecutive sentences were therefore improper. *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) held that individual acts of bank robbery with a firearm cannot be punished with consecutive sentences for aggravated bank robbery and for using firearms to commit a robbery. *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) held that the single discharge of a shotgun would constitute only a single violation of a statute prohibiting assault on a federal officer even though two officers were injured. *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), held that a single act of transporting two women for the purpose of prostitution constituted a single offense under the Mann Act.

Congress to crack down on criminal drug operations when it enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970. When asked to interpret an earlier drug law, the Supreme Court stated that "Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws." *Gore v. United States,* 357 U.S. 386, 391, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405, 1409 (1958). This attitude has not changed, for one stated goal of the 1970 Act was to bring the full power of the federal government to bear on the illegal traffic in drugs. *See United States v. Rodriguez,* 612 F.2d 906, 915–16 (5th Cir. 1980) (en banc), *affirmed sub nom. Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Furthermore, under the 1970 Act, "[t]he Congressional intent in setting criminal penalties for drug offenses was to 'give maximum flexibility of judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case.'" *United States v. Davis,* 656 F.2d 153, 159 (5th Cir. 1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982), *quoting* H.R.Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4566, 4576. In furtherance of these policies the trial judge should have the option of imposing concurrent or consecutive sentences.

Allowing consecutive sentences in this case will promote congressional intent to stem the tide of illegal drug trafficking by deterring ongoing criminal drug operations. Were we to adopt the construction urged by the appellant, the drug offender would have little incentive from the law to cut short his operation once it was started. As long as his varied or prolonged actions were all motivated by a single financial plan, he would be subject to but one conviction should he be apprehended. The stated purposes and overall structure of the Act indicate that Congress would not approve of such a construction. Congress was obviously concerned with deterring ongoing drug trafficking engaged in for profit. Special provisions under the 1970 Act imposing severe criminal penalties are aimed at such activities. *See* 21 U.S.C. §§ 848–49. While the emphasis was on rehabilitation of individual abusers and drug users who violate the law by small purchases or sales, there was no indication of leniency toward those who engage in the trafficking of drugs for profit. "The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive." H.R. Rep. No. 1444, 91st Cong., 2d Sess., *quoting* Report of the President's Advisory Commission on Narcotic and Drug Abuse, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4566, 4575.

AFFIRMED.