**UNITED STATES of America, Appellee,**

v.

**Ricky Dean WEATHERD a/k/a Dean Richard Good, Appellant.**

**No. 82–1698.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1982.

Decided Feb. 18, 1983.

---

Robert G. Ulrich, U.S. Atty., J. Whitfield Moody, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Austin F. Shute, Willard B. Bunch, Campbell, Erickson, Cottingham, Morgan & Gibson, John Edward Cash, Kansas City, Mo., for appellant.

Before ROSS and FAGG, Circuit Judges, and WATERS *, District Judge.

FAGG, Circuit Judge.

Ricky Dean Weatherd appeals his jury conviction for one count of conspiring to distribute methamphetamine and two counts of distributing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Weatherd to five years imprisonment on each count, the sentences to run concurrently. Weatherd alleges that the following errors require reversal:

(1) the evidence was insufficient to support the verdict;

(2) the verdict rested upon evidence seized in violation of his Fourth Amendment rights;

(3) the court failed, on one occasion, properly to admonish the jury when it separated; and

(4) he was convicted on two counts for a single offense.

We affirm the convictions.

## I. BACKGROUND

The charges against Ricky Weatherd stem from an undercover drug investigation in which police officer Robert Sorensen and federal agent David Major negotiated with Cindi Avery and Richard Roberts to purchase four ounces of methamphetamine for $6,500. The transaction was to be consummated in the parking lot of a local restaurant. The original agreement had been for the single purchase of four ounces of methamphetamine; however, a few minutes prior to Roberts' arrival at the parking lot, the agents were advised by Avery that there would be two transactions to allay Roberts' fear of trickery. According to her, Roberts would initially exchange two ounces and after obtaining the money for the first two ounces he would then obtain and sell an additional two ounces. The modified agreement was acceptable to the agents.

When Roberts arrived at the parking lot, he produced two ounces of methamphetamine and Agent Major handed him $3,000 in pre-recorded government bills. At this point, Roberts stated that he had to return to his residence to pick up the additional two ounces from his source. Two officer-agent teams in separate vehicles followed Roberts after he left the restaurant lot. An officer testified that he observed Weatherd and Roberts meeting in a nearby vacant parking lot, talking and leaning over the open trunk of a car. Although the officer did not see anything pass between Weatherd and Roberts, Weatherd later admitted that Roberts had handed him a canvas envelope. After meeting with Weatherd, Roberts returned to the restaurant parking lot, approximately eight or nine minutes after the first transaction, to sell

* The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

the additional two ounces to Agent Major and Officer Sorensen. When Roberts gave Agent Major the additional methamphetamine for another $3,500, Roberts and Avery were placed under arrest. The $3,500 which Major had handed to Roberts was immediately recovered but, when searched, Roberts had only $22.00 in his pockets.

After the meeting with Roberts, Weatherd had been observed driving to Roberts' apartment. Several officers and agents entered the apartment and arrested Weatherd, who was waiting for Roberts to return. The officers briefly searched the apartment and then took Weatherd to the police station. Approximately fifty minutes after the first search two officers returned to the apartment for a further search and found a canvas envelope under the living room sofa which contained thirty $100 bills, later identified as the government recorded "buy money."

## II. SUFFICIENCY OF THE EVIDENCE

█ Weatherd contends that the evidence was insufficient to support his conviction on either the conspiracy or distribution counts. We disagree. This court must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision. *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *United States v. Deon,* 656 F.2d 354, 355 (8th Cir.1981).

The essential elements of conspiracy and of distributing a controlled substance are well established. *See, e.g., United States v. Boone,* 641 F.2d 609, 611 (8th Cir.1981) (conspiracy); *United States v. Irby,* 480 F.2d 1101, 1102 (8th Cir.1973) (distribution). Co-defendant Cindi Avery testified that Roberts told her that his source for the methamphetamine was a "Little Rick" and that she had known Weatherd by this nickname. The testimony of at least one other witness corroborated Weatherd's use of this nickname. Avery also testified that she had previously seen Weatherd giving methamphetamine to Roberts. An officer testified that he saw Weatherd meet with Roberts during the brief interval between the two exchanges when Roberts was obtaining the additional drugs, and that he was the only person to come in contact with Roberts during this interval. Weatherd also admitted to such a meeting. Finally, Weatherd admitted that Roberts had given him a canvas envelope to take to Roberts' apartment. The envelope, which had been hidden under a sofa, was found to contain the $3,000 in pre-recorded bills. Under the circumstances, a jury could reasonably infer that Weatherd was Roberts' source for the methamphetamine. The evidence was sufficient clearly to create a jury question on both the conspiracy and the distribution counts.

## III. UNCONSTITUTIONAL SEARCH AND SEIZURE

Weatherd argues that the district court improperly overruled his pretrial motion to suppress the $3,000 in pre-recorded government bills found in an apartment occupied by Roberts and Barbara Coin. After an evidentiary hearing, the district court concluded that Coin had consented to the search.

█ Before addressing the issue of consent, Weatherd must establish that he had a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The evidence showed that the apartment was leased and occupied by Coin and Roberts; Weatherd had never resided there, nor had he ever been in the apartment prior to the occasion in question. Weatherd had hidden the envelope under the sofa without the knowledge of Coin. Finally, Weatherd was not even present in the apartment at the time it was searched. Under these circumstances, Weatherd did not have any legitimate expectation of privacy in an envelope that was hidden under a sofa in another's apartment.

█ Moreover, we cannot say that the district court's determination that Coin had validly consented to the search is clearly erroneous. *United States v. Allison,* 619

F.2d 1254, 1262 (8th Cir.1980); *United States v. Williams,* 604 F.2d 1102, 1126 (8th Cir.1979). The issue of consent was primarily a factual dispute between the investigating police officers on one hand and Coin on the other. The district court had a superior opportunity to judge the credibility of the witnesses and its decision will not be reversed when, as in this case, there is substantial evidence in the record to support its conclusion. *United States v. Green,* 678 F.2d 81, 84 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982). As a lawful occupant of the apartment, Coin clearly had authority to consent to the search. *See United States v. Matlock,* 415 U.S. 164, 170–71, 94 S.Ct. 988, 992–993, 39 L.Ed.2d 242 (1974). We believe the district court properly applied the rules that are applicable to a consent search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

## IV. JURY SEPARATION

■ Weatherd also argues that the district court committed reversible error by allowing the jury to separate overnight after it had commenced deliberations without admonishing the jurors not to discuss the case among themselves or with others. Although defense counsel was present, he made no objection to permitting the jury to separate without such an admonition. Nor is there any claim of prejudice resulting from the overnight separation. Weatherd relies principally upon *United States v. Williams,* 635 F.2d 744 (8th Cir.1980), in which this court reversed a conviction because no such admonition was given to the jury when it separated overnight during deliberations or at any other time during the trial. In this case, the court instructed the jury not to discuss the case among themselves or with others on at least thirteen occasions. In light of the repeated admonitions, we are satisfied that the jurors were adequately apprised of their duty not to discuss the case outside the jury room. The district court did not commit reversible error by failing to admonish the jury on this one occasion. *See United States v. Miles,* 483 F.2d 1372, 1374 n. 2 (8th Cir.1973); *Kleven*

*v. United States,* 240 F.2d 270, 273–74 (8th Cir.1957).

## V. MULTIPLICITY OF INDICTMENT

■ Finally, Weatherd contends that the government has divided a single distribution into two parts with the result that he has been convicted on separate counts for a single offense. The statute in question proscribes the knowing or intentional distribution of a controlled substance. 21 U.S.C. § 841(a)(1). Distribution is defined as "delivery," which in turn is defined as "the actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C. §§ 802(11), (8). In *United States v. McDonald,* 692 F.2d 376 (5th Cir.1982), the Fifth Circuit concluded that the simple and unambiguous language of the statute "clearly defines the unit of prosecution to be the act of delivering controlled substances into the hands of another * * *." *Id.* at 379. The court held that when there are distinct, physical acts of transfer, each such act is a "delivery" under the statute, even though occasioned by a single financial plan.

We hold that there was evidence from which the jury could have found that Weatherd participated in two criminal acts. There were two distributions at Roberts' behest. The drugs were transferred separately for separate payment. There was no assurance that Roberts would return with the additional methamphetamine after he made the first exchange. The second exchange hinged upon the success of the first exchange and upon Roberts obtaining additional drugs from his source. Drug sellers cannot be heard to complain of the criminal consequences of sales which have been separately structured to suit their needs. Under the facts with which we are faced, we hold that there were two distributions and, hence, two violations of the statute. *See United States v. Schrenzel,* 462 F.2d 765, 771 (8th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972). *Cf. United States v. Herzog,* 644 F.2d 713, 715–16 (8th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

We have carefully examined Weatherd's other claims of error and find them to be without merit. His convictions should be affirmed.

Affirmed.