**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph Alvin ANDERSON,**
**Defendant–Appellant.**

**Nos. 91–2270, 91–2293 and 91–2334.**

United States Court of Appeals,
Fifth Circuit.

March 22, 1993.

Thomas S. Berg, Roland E. Dahlin, II, Federal Public Defender, Houston, TX, for defendant-appellant.

Jeffery A. Babcock, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, TX, for plaintiff-appellee.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant, Joseph Alvin Anderson, appeals (1) his convictions for manufacturing and attempting to manufacture methamphetamine (No. 91–2293), (2) the district court's denial of habeas corpus relief on his conviction for possessing an unregistered silencer (No. 91–2270), and (3) the district court's judgment revoking his probation (No. 91–2334). We affirm on all issues, except one; we vacate the district court's judgment revoking Anderson's probation and remand for resentencing.

I

On February 2, 1990, law enforcement officers executed a search warrant at Anderson's home. The officers seized a number of items from Anderson's residence, including: various quantities of methamphetamine and amphetamine in liquid-paste and powder forms, precursor chemicals, scales, laboratory equipment, counterfeit currency, explosives, and over 100 firearms—none of which were registered to Anderson, and several of which were subsequently determined to be stolen. A recipe for manufacturing methamphetamine and drug ledgers were also seized. In a shed behind Anderson's home, the officers discovered a clandestine laboratory which appeared to be in operation; the officers saw two pots of a liquid substance heating on a hot plate. Anderson was arrested and subsequently charged in a superseding indictment with six counts: (1) manufacture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (1988); (2) attempted manufacture of methamphetamine, in violation of 21 U.S.C. § 846 (1988); (3) using and carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (1988); (4) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(1), (2) (1988); (5) possession of an unregistered automatic weapon, in violation of 26 U.S.C. §§ 5861(d) & 5871 (1988); and, (6) possession of a firearm that had an altered serial number, in violation of 26 U.S.C. § 5861(d) & 5871 (1988). At the time of his arrest, Anderson was on federal

probation for the possession of an unregistered silencer. In Criminal No. H–90–108–01, Anderson was convicted by a jury on all six counts. However, the district court vacated Anderson's conviction under Count 6.

The district court sentenced Anderson to 120 months imprisonment on Counts 1, 2, 4, and 5 to run concurrently; a mandatory 60 month sentence on Count 3 to run consecutive to the other counts; five years supervised release on Counts 1 and 2, and three years supervised release on Counts 3, 4, and 5 to run concurrently. In addition, Anderson was ordered to pay a $50.00 special assessment on each count, for a total of $250.00. Anderson's probation for the possession of an unregistered silencer was also revoked, and he was sentenced to ten years imprisonment for possession of the silencer, with this sentence to run consecutive to the sentence imposed in Criminal No. H–90–108–01.

In this consolidated appeal, Anderson claims that:

(a) his convictions under Counts 1 and 2 violated the double jeopardy clause, because he could not be convicted of both manufacturing methamphetamine and attempting to manufacture the same;

(b) the district court erred in sentencing him for manufacturing and attempting to manufacture methamphetamine because the government failed to allege the quantity of methamphetamine in the indictment, and the district court improperly used the entire weight of a substance containing only a trace of methamphetamine.

(c) the district court improperly instructed the jury that they could find him guilty of possessing an unregistered firearm if he had component parts of a silencer; and

(d) the district court denied him his right of allocution at his probation revocation hearing.

## II

### A

In appeal No. 91–2293, Anderson argues that Count 2 (attempt to manufacture methamphetamine) was a lesser included offense of Count 1 (manufacture of methamphetamine), and therefore his multiple convictions and sentences on both counts violated the double jeopardy clause. In general, "attempt is an offense included in the completed crime, and, therefore, cannot support a separate sentence and conviction." *United States v. York*, 578 F.2d 1036, 1040 (5th Cir.) *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978); *see also Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977) (The double jeopardy clause "protects against multiple punishments for the same offense."). This rule usually applies where multiple convictions and sentences are based on a single act or transaction,[1] and does not apply where the completed crime is factually distinct from the attempted offense. *See United States v. McDonald*, 692 F.2d 376, 377–80 (5th Cir.1982) (Where defendant argued that his conviction on two counts of distributing a controlled substance under § 841(a) violated the double jeopardy clause, we held that two separate physical deliveries of a controlled substance, which were motivated by a single financial scheme, constituted two distinct criminal acts subject to consecutive sentences.), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *cf. United States v. Forester*, 836 F.2d 856, 859–61 (5th Cir.1988) (Although we upheld defendant's convictions for attempt to manufacture methamphetamine and possession of P2P with intent to manufacture methamphetamine, we held that defendant could

---

1. However, we have on numerous occasions "upheld multiple convictions and separate sentences even where the defendant arguably engaged in but a single act, agreement or course of conduct." *United States v. McDonald*, 692 F.2d 376, 379 (5th Cir.1982). We have upheld separate sentences and convictions for: "importa-tion of cocaine and possession of the same with intent to distribute; simultaneous possession of two different drugs with intent to distribute; conspiracy to import marijuana and conspiracy to import the same; conspiracy to import and attempt to import the same marijuana." *Id.* (footnotes omitted).

not receive separate sentences for both convictions because they involved successive steps in one manufacturing process.). The manufacture of one batch of methamphetamine is factually distinct from the manufacture of another batch. *See United States v. Housley*, 907 F.2d 920, 922–23 (9th Cir.1990) (upholding defendant's convictions for manufacturing methamphetamine and attempt to manufacture methamphetamine because the crimes involved two distinct batches of methamphetamine). Therefore, a defendant may receive separate convictions and sentences for manufacturing one batch of methamphetamine and attempting to manufacture another batch. *Id.*

■ Anderson did not merely execute steps in manufacturing one batch of methamphetamine as in *Forester*. Rather, there was evidence that the manufacture of methamphetamine as charged in Count 1 was factually distinct from the attempt to manufacture methamphetamine as charged in Count 2. Anderson had succeeded in manufacturing one batch of methamphetamine. *See* Record on Appeal, No. 91–2293, vol. 14, at 13 (some quantities of methamphetamine in its final powdered form were seized from Anderson's house). There was evidence that Anderson was attempting to manufacture a second batch of methamphetamine when the search warrant was executed, and it was this attempt that served the basis for Anderson's conviction under Count 2 for attempting to manufacture methamphetamine. Count 2 therefore was not a lesser included offense of Count 1.

Anderson also argues that there was insufficient evidence to support his conviction under Count 2 for attempting to manufacture a second batch of methamphetamine.[2] The standard of review for judging the sufficiency of the evidence "is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir.1988). In making this determination, the evidence must be considered "in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices." *Id.* To convict Anderson of attempt under 21 U.S.C. § 846 (1988), the government had to prove that he (1) acted with the required criminal intent, and (2) engaged in conduct constituting a "substantial step" toward commission of the substantive offense, "i.e., conduct strongly corroborative of the defendant's criminal intent." *United States v. Stone*, 960 F.2d 426, 433 (5th Cir.1992).

■ There was sufficient evidence that Anderson was attempting to manufacture a second batch of methamphetamine when the search warrant was executed. In a shed behind Anderson's house, law enforcement officers discovered a makeshift laboratory, consisting of a heater mantle,[3] two pots on top of a hot plate,[4] syrup canisters,[5] a condenser,[6] a soft drink dispenser,[7] an aluminum foil bucket,[8] large glass containers,[9] canisters possibly containing lye (sodium hydroxide),[10] and fans for ventilation[11]. The DEA chemist testified that the laboratory could be used to manufacture metham-

---

**2.** At oral argument Anderson conceded that quantities of methamphetamine in its final powdered form were found in his home, and does not argue that his conviction under Count 1 for the manufacture of methamphetamine was not supported by the evidence. Anderson argues only that there was no evidence that he was attempting to manufacture a second batch of methamphetamine. *See* Brief for Anderson, No. 91–2293, at 12–13 ("At the time of his arrest, Mr. Anderson was seated at his kitchen table, ... not in the lab 'cooking up' another batch of drugs additional to that which was seized.").

**3.** Record on Appeal, No. 91–2293, vol. 9, at 103; *id.* vol. 10, at 3–116, 3–129; *id.* vol. 12, at 17.

**4.** *Id.* vol. 9, at 74–75, 103–04; *id.* vol. 10, at 3–69.

**5.** *Id.* vol. 9, at 104.

**6.** *Id.* vol. 10, at 3–116.

**7.** *Id.* vol. 12, at 24.

**8.** *Id.*

**9.** *Id.*

**10.** *Id.* at 18.

**11.** *Id.* vol. 10, at 3–117; *id.* vol. 12, at 24.

phetamine. *See* Record on Appeal, No. 91–2293, vol. 12, at 24. Furthermore, Agent Lewis testified that, based on his experience,[12] the laboratory appeared to be a laboratory for manufacturing methamphetamine. *See id.* vol. 10, at 3–69. Some of the law enforcement officers who executed the search warrant testified that, upon entering the shed, they noticed that the hot plate was on, *see id.* vol. 9, at 75, 103–04, and smelled the distinct odor of methamphetamine emanating from the two pots that were on the hot plate, *see id.; id.* vol. 10, 3–116, 3–129. In addition, the officers found recipes for manufacturing methamphetamine in Anderson's house, as well as P2P, a precursor chemical used in manufacturing methamphetamine. *See id.* vol. 14, at 9, 18, 20. In light of the evidence, a trier of fact could have found Anderson guilty beyond a reasonable doubt of attempting to manufacture methamphetamine. We therefore hold that there was sufficient evidence to convict Anderson under Count 2 as charged.

■ Anderson further contends that either his conviction under Count 1 or his conviction under Count 2 should be reversed because the district court erroneously failed to instruct the jury specifically that in order to convict him under both Counts 1 and 2, it had to find two factually distinct offenses. Because Anderson did not object to the instruction before the district court, we will reverse only if the instruction constituted plain error, "i.e., if 'considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice.'" *Stone,* 960 F.2d at 434 (quoting *United States v. Sellers,* 926 F.2d 410, 417 (5th Cir.1991)). The district court's omission, if any, does not amount to plain error "unless it could have meant the difference between acquittal and conviction." *United States v. Contreras,* 950 F.2d 232, 240 (5th Cir.1991) (in instructing jury on law of attempt, district court did not plainly err in failing to tell jury that they had to find that defendant engaged in conduct constituting a substantial step towards commission of the crime), *cert. denied,* —— U.S. ——, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992). We disagree that the district court erred by not telling the jury that it had to find two factually distinct offenses. First, we have not found any cases, nor have the parties cited to any, which require such an instruction. Second, the district court properly instructed the jury on the elements of both offenses—manufacture of methamphetamine and attempt to manufacture methamphetamine. *See* Record on Appeal, No. 91–2293, vol. 15, at 6–174 to –175. Third, the government argued during closing argument that there were two factually distinct offenses. *See id.* at 6–114 to –115 ("[Anderson] had already manufactured methamphetamine, [and was] in the position of making substantial steps to make more. [Anderson] hadn't finished, [he] hadn't been able to complete it, but [he was] attempting to make more."), 6–153. Fourth, as discussed above, there was sufficient evidence that the attempt to manufacture methamphetamine was factually distinct from the manufacture of methamphetamine. Therefore, the district court's omission, if any, clearly did not amount to plain error, because it did not mean the difference between acquittal and conviction.

### B

In appeal No. 91–2293, Anderson also challenges the sentences imposed for his convictions under Counts 1 and 2, claiming that (1) the government failed to allege the quantity of methamphetamine seized in the indictment, and (2) the district court erred in using the total amount of a substance containing a trace of methamphetamine rather than the total amount of usable

---

12. Agent Lewis, a special agent with the DEA, was assigned to the Clandestine Lab Group, which was responsible for investigating clandestine laboratories that were engaged in the manufacture of controlled substances such as methamphetamine. *See id.* vol. 10, at 3–66. Agent Lewis testified that he had seen 35–40 metham-

methamphetamine.[13] Because Anderson was convicted under 21 U.S.C. §§ 841(a) and 846, he was subject to the penalties of 21 U.S.C. § 841(b). The district court sentenced Anderson to ten years imprisonment on each count, such terms to run concurrently, on the ground that Anderson manufactured and attempted to manufacture one kilogram or more of a substance containing a detectable amount of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (1988).[14]

■ Anderson first argues that he should not have been sentenced based on the quantity of methamphetamine involved, because the government did not mention a specific quantity of methamphetamine in the indictment. We expressly rejected Anderson's argument in *United States v. Royal*, 972 F.2d 643 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1258, 122 L.Ed.2d 655 (1993). We held in *Royal* that because quantity is not an element of offenses proscribed by § 841(a), quantity is relevant only at sentencing under § 841(b), and as a result, a defendant is not entitled to be notified through the indictment that the government intends to use quantity in seeking a sentence. *See id.* at 650. We therefore hold that Anderson was not entitled to receive notice of the government's intent to use quantity in the indictment.

■ Due process only requires adequate notice of the possibility that a defendant's sentence will be based on quantity. *See Royal*, 972 F.2d at 650. While Anderson may not have received notice in the indictment, Anderson did receive adequate notice through the presentence investigation report that the quantity of methamphetamine would be relevant in determining his sentence. *See id.* ("[T]he Presentence Report notified [the defendant] that the quantity of cocaine would be relevant in determining his sentence.").

■ Anderson next argues that the district court improperly based his sentence on the entire weight of a substance containing only a trace amount of methamphetamine. Anderson submits that the district court should have based his sentence only on the amount of pure methamphetamine that was found, and not on the entire weight of the seized substance. The DEA chemist found a detectable amount of methamphetamine in the substance seized from Anderson's home, and the substance weighed at least one kilogram. *See* Record on Appeal, No. 91–2293, vol. 12, at 46; *id.* vol. 14, at 5–6. We review a district court's application of the sentencing guidelines de novo and its factual findings for clear error. *United States v. Ruff*, 984 F.2d 635, 639 (5th Cir.1993).

■ In *United States v. Sherrod*, 964 F.2d 1501 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 832, 121 L.Ed.2d 701 (1992), *and cert. dismissed*, — U.S. —, 113 S.Ct. 834, 122 L.Ed.2d 111 (1992), *and cert. denied*, — U.S. —, 113 S.Ct. 1367, 122 L.Ed.2d 745 (1993), we expressly rejected Anderson's argument, holding that it is not improper for the district court to consider the total weight of a substance containing a detectable amount of methamphetamine in sentencing a defendant.[15]

phetamine laboratories in his career. *See id.* at 3–69.

**13.** Anderson also claims that his conviction for possessing an unregistered silencer should not have been included in the calculation of his criminal history category because the conviction was obtained in violation of the ex post facto clause and his right to the effective assistance of counsel. *See* Brief for Anderson, No. 91–2293, at 13. Because we uphold Anderson's conviction, this argument is without merit. *See* discussion *infra* part II.C.

**14.** Section 841(b) sets forth three penalty ranges for the offense of manufacturing methamphetamine, based upon the total amount of methamphetamine involved: (1) ten years to life if "100

grams or more of methamphetamine ... or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine" were involved; (2) five to forty years if "10 grams or more of methamphetamine ... or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine" were involved; and (3) zero to twenty years for all other methamphetamine offenses (except those involving death, serious bodily injury, or repeat offenders). *See* 21 U.S.C. § 841(b) (1988).

**15.** The Circuits are split on this issue. *Ruff*, 984 F.2d at 639; *see also Walker v. United States*, — U.S. —, —, 113 S.Ct. 443, 443, 121 L.Ed.2d 362 (1992) (White, J., dissenting from denial of

*See id.* at 1509–11; *see also Ruff,* at 639 (upholding sentence where district court considered the entire amount of mixtures containing trace amounts of methamphetamine). We stated that the argument now advanced by Anderson was inconsistent with § 841(b), the sentencing guidelines, and passages in *Chapman v. United States,* —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). *See Sherrod,* 964 F.2d at 1509; *see also United States v. Walker,* 960 F.2d 409, 412 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992). Thus, the district court properly based Anderson's sentence on the entire weight of the substance containing only a trace amount of methamphetamine. *See id.*

## C

Anderson was arrested on October 27, 1986, and subsequently indicted under Count 4 for possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871 (1988).[16] Count 4 described the firearm as an unregistered silencer with an overall length of four and three fourth inches, bearing no serial number. *See* Record on Appeal, No. 91–2270, vol. 1, at 186. At trial, the government introduced into evidence its Exhibit 4, which was identified as a rear portion of a siotic type silencer. *See id.* vol. 4, at 152, 197. The government also introduced Exhibit 4–A, which was identified as some of the internal parts of the front section of a silencer. *See id.* at 152, 201. The jury convicted Anderson on Count 4, and the conviction was affirmed on direct appeal. Subsequently, Anderson's application for rehearing en banc was granted. *United States v. Anderson,* 885 F.2d 1248 (5th Cir.1989). In his en banc brief Anderson argued that the district court's definition of a silencer violated the ex post facto clause, but the en

banc panel refused to address the argument because it was raised for the first time. *See id.* at 1250 n. 2. Anderson then filed a 28 U.S.C. § 2255 (1988) motion in federal district court, raising the ex post facto argument. The district court denied the § 2255 motion, and Anderson appeals.

### 1

In appeal No. 91–2270, Anderson first argues that the district court violated the ex post fact clause by erroneously instructing the jury that they could find him guilty of possessing an unregistered firearm for having component parts of a silencer. Anderson claims that the instruction constituted an ex post facto violation, because at the time he committed the offense component parts of a silencer did not satisfy the statutory definition of a silencer.

At the time Anderson committed the offense, "firearm" was defined to include "[a]ny device for silencing or diminishing the report of any portable weapon ... and is not limited to mufflers or silencers for 'firearms' as defined." 27 C.F.R. § 179.11 (1986); *see also* 26 U.S.C. § 5845(a)(7) (1988) (defining silencer by reference to 27 C.F.R. § 179.11). After Anderson's arrest, § 5845(a)(7) was amended to define silencer as "any device for silencing, muffling or diminishing the report of a portable firearm, *including any combination of parts,* designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24) (1988) (emphasis added); *see also* 26 U.S.C. § 5845(a)(7) (defining silencer by reference to § 921(a)(24)).[17]

The district court's instruction to the jury with regard to Count 4 was as follows:

---

certiorari) (stating that the Second, Third, Sixth, Ninth, and Eleventh Circuits have adopted a position contrary to that of the First, Fifth, and Tenth Circuits); *Sherrod,* 964 F.2d at 1509 (stating that we had expressly declined in *Walker* to follow the Sixth Circuit's approach).

**16.** Anderson was also charged with three other counts of unlawful possession of a firearm.

**17.** Section 5845(a)(7) was amended in May 1986, before Anderson committed the offense. The amendment did not take effect, however, until November 15, 1986, three weeks after Anderson committed the offense.

Count Four reads that ... Joe Alvin Anderson, defendant herein, did unlawfully and knowingly possess a firearm as defined in [26 U.S.C. § 5845(a)(7)]; that is, a silencer with an overall length of four and three quarters inches, bearing no serial number, which firearm was not registered to him....

....

And the statute says:

"A silencer for any firearm, whether or not such firearm is included within this definition."

Now, Title 18, United States Code, section 921(24), defines firearm silencer as, "any device for silencing, muffling or diminishing the report of a portable firearm, including any combination of parts designed or redesigned and intended for use in assembling or fabricating a firearm silencer or firearm muffler and any part intended only for use in such assembly or fabrication."

And, again, the statute provides under [26 U.S.C. § 5871], any person who fails to comply with any provision of this statute, and that's the registration requirement, violates the law.

So, in Count Four, the government has alleged the defendant unlawfully and knowingly possessed a firearm silencer in violation of the law. That is, by failing to register the said firearm in the National Firearms Registration and Transfer Record.

Now, in order to establish the offenses prohibited by these statutes, there are two essential elements which the government must prove beyond a reasonable doubt:

First, that the defendant at the time and place alleged in the indictment knowingly possessed a firearm, it can be any other weapon or silencer, and

Second, that the firearm or any other weapon or silencer was not then registered to the defendant in the National Firearms Registration and Transfer Record.

It is not necessary for the government to prove that the defendant knew that the item described in the indictment was a firearm which the law requires to be registered. What must be proved beyond a reasonable doubt is that the defendant knowingly possessed the item as charged, that such item was a firearm, as defined before, and that it was not then registered to the defendant in the National Firearms Registration and Transfer Record.

Record on Appeal, No. 91–2270, vol. 5, at 299–300.

■ On collateral review of an allegedly erroneous jury instruction, we must determine " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' ... not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned." ' " *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)) (citation omitted); *see also Thompson v. Lynaugh,* 821 F.2d 1054, 1060 (5th Cir.), *cert. denied,* 483 U.S. 1035, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987).[18] Although *Henderson* involved a habeas petition brought by a state prisoner, *see id.* 431 U.S. at 151, 97 S.Ct. at 1735, the Supreme Court has extended *Henderson* to habeas petitions brought by federal prisoners. *See United States v. Frady,* 456 U.S. 152, 166, 169 & n. 17, 102 S.Ct. 1584, 1593, 1595 & n. 17, 71 L.Ed.2d 816 (1982). In doing so, the Supreme Court stated that while it was not confronted with the considerations of comity present in *Henderson,*

the Federal Government, no less than the States, has an interest in the finality of its criminal judgments. In addition, a federal prisoner ..., unlike his state counterparts, has already had an oppor-

---

**18.** The Supreme Court noted that this standard is stricter than that used to review erroneous jury instructions on direct appeal: "[T]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson,* 431 U.S. at 154, 97 S.Ct. at 1736–37.

tunity to present his federal claims in federal trial and appellate forums. On balance, we see no basis for affording federal prisoners a preferred status when they seek postconviction relief. *Id.,* 456 U.S. at 166, 102 S.Ct. at 1593; *see also United States v. Flores,* 981 F.2d 231, 235 & n. 5 (5th Cir.1993) (federal government's interest in finality of judgments is no less than that of the states). In reviewing an allegedly erroneous jury instruction, " '[a] single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Frady,* 456 U.S. at 169, 102 S.Ct. at 1595 (quoting *Cupp,* 414 U.S. at 146–47, 94 S.Ct. at 400). Furthermore, " 'a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instructions of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.' " *Id.* (quoting *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400)).

■ Anderson argues that the district court's instruction amounted to a due process violation, because the jury could have found him guilty on the ground that Exhibit 4 was a part designed and intended for use in assembling a silencer—which allegedly would have been impermissible.[19] Anderson bases his argument on the testimony of the government's expert witness, who referred to Exhibit 4 alternatively as a silencer, and as part of a silencer. *See* Record on Appeal, No. 91–2270, vol. 4, at 197, 231, 236–37. Nonetheless, Anderson has not shown that the jury found Exhibit 4 to be a part designed and intended for use in assembling a silencer. It appears more likely that the jury found Exhibit 4 to be a device that diminished the report of a weapon, and therefore met the statutory definition of a silencer. *See* 27 C.F.R.

§ 179.11 (1986). There was uncontradicted evidence that Exhibit 4 reduced the report of a pistol in Anderson's possession by nine decibels. *See id.* vol. 4, at 198–200, 232. Furthermore, the government's only argument was that Exhibit 4 was a firearm because it diminished the report of a weapon found in Anderson's possession. *See id.* at 198–201; *id.* vol. 5, at 275–76. The government never argued that Exhibit 4 was a part designed and intended to be used in the assembly of a silencer. *See id.* vol. 4, at 133–34, 197–201; *id.* vol. 5, at 275–76. Therefore, it is unlikely that the jury based its verdict on a finding that Exhibit 4 was a component part of a silencer.

■ Anderson also argues that the jury could have based its conviction on Count 4 solely on Exhibit 4–A, which was identified as component parts of a silencer. We disagree. The district court, in denying Anderson's § 2255 motion, stated that "the instruction given by the trial court specifically identified the silencer alleged in Count Four as 'a silencer with an overall length of four and three quarters inches, bearing no serial number.' Such a description could have allowed the jury to consider only exhibit 4 with regard to Count Four." Record on Appeal, No. 91–2270, vol. 1, at 23. Although there is no evidence in the record that explicitly states the lengths of Exhibits 4 and 4–A, it is clear that all the parties believed that Count 4—referring to a silencer four and three fourth inches long—described Exhibit 4. Furthermore, the parties do not dispute that Exhibit 4 had an overall length of four and three quarters inches, and Anderson does not argue that Exhibit 4–A was of that length. We conclude that Count 4—by describing the silencer as being four and three quarters inches long—referred to Exhibit 4, and not 4–A. As a result, the district court's instruction only permitted the jury to convict Anderson for possession of Exhibit 4.[20]

---

19. Because we hold that the district court's instruction did not amount to plain error, we do not decide whether the district court erred in instructing the jury that the statutory definition of a silencer included component parts.

20. Because Anderson does not argue that the jury disregarded the district court's instructions, we presume that the jury followed its instructions. *See Zafiro v. United States,* — U.S. —, —, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993).

Therefore, we hold that the district court's instruction by itself did not so infect the trial that the resulting conviction violated due process.

### 2

 Anderson next claims that he had ineffective assistance of counsel because his counsel failed to object to the district court's instruction as discussed in Part II. C.1. To prevail, he must prove that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish prejudice, Anderson must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Anderson has not established that his counsel's error, if any, prejudiced his case. If his counsel had objected to the instruction on the component parts, the district court still could have instructed the jury that it could find Anderson guilty under Count 4 for having a device that diminished the sound of a weapon. Uncontradicted evidence was given at trial that Exhibit 4 did diminish the sound of a pistol in Anderson's possession by nine decibels. *See* Record on Appeal, No. 91–2270, vol. 4, at 198–201; *id.* vol. 5, at 275–76. Consequently, we find that Anderson has not shown a reasonable probability that the result of his trial would have been different but for his counsel's alleged error.

### D

 Finally, in appeal No. 91–2334, Anderson alleges that the district court denied him his right of allocution at his probation revocation hearing. The government concedes that the district court erred by not specifically addressing Anderson and asking him if he wanted to exercise his right of allocution. *See* Brief for United States at 23. Under Fed.R.Crim.P. 32(a)(1)(C), defendants must be given the opportunity personally to speak in their own behalf before sentence is imposed.

*United States v. Dominguez–Hernandez*, 934 F.2d 598, 599 (5th Cir.1991). "If the district court fails to provide the right of allocution, resentencing is required." *Id.* Therefore, we vacate and remand the district court's judgment for resentencing.

### III

For the foregoing reasons, we VACATE the district court's judgment revoking Anderson's probation and REMAND for resentencing; in all other respects, the district court's judgment is AFFIRMED.