UNITED STATES of America,
Plaintiff–Appellee,

v.

Beverly D. KELLY, Defendant–
Appellant.

No. 01–3898.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 2002.

Decided May 24, 2002.

Before CUDAHY, RIPPLE, and
ROVNER, Circuit Judges.

## ORDER

Beverly Kelly pleaded guilty to distributing cocaine base under an aiding-and-abetting theory of liability. *See* 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1). In his written plea agreement, Kelly stipulated that he agreed to accompany a man named Tommy Parnell to a crack sale and sat in the passenger seat of Parnell's van while the buyer–who turned out to be a confidential informant–entered the van. The buyer then handed Parnell $240; Parnell handed the buyer a rock of crack. When the buyer complained that Parnell had not given him enough crack, Kelly held a digital scale while Parnell weighed the rock. Parnell then returned the rock–which weighed between 1 and 2 grams–to the buyer, along with several additional rocks that he did not weigh. The buyer received 3 grams of crack in all, and the district court, reasoning that Kelly directly participated in the transaction, based his sentence on the three-gram amount.

Kelly insists that this was error, and that he is accountable only for the amount of crack that was weighed while he held the scale. But none of the arguments Kelly advances in support of this theory are sound. His assertion at oral argument that he pleaded guilty not to distribution but to "aiding and abetting" is incorrect; aiding and abetting is a theory of liability and not a distinct offense. *See, e.g., United States v. Hunt,* 272 F.3d 488, 492 n. 1 (7th Cir.2001). Kelly also seems to suggest that the evidence of his participation in the distribution is insufficient because none of it shows that he helped arrange the sale, assisted Parnell with other transactions, handled any of the cash or crack, or even was aware of the sale before Parnell picked him up. This argument, however, is effectively foreclosed by his guilty plea. *See, e.g., United States v. Pierson,* 53 F.3d 62, 65–66 (4th Cir.1995) (limited nature of defendant's participation in crime is relevant to liability under § 841(a)(1), but not to sentencing exposure after plea has been entered). Indeed, as Kelly conceded at oral argument, that he entered his plea as an aider and abettor rather than a principal does not affect his sentence; under the guidelines the offense level is the same. *See* U.S.S.G. §§ 1B1.3(a)(1)(A) (base offense level includes acts defendant personally commits or aids and abets); 2X2.1 & comment. (n.1) (offense level for aiding and abetting is same as for underlying offense); *United States v. Miller,* 283 F.3d 907, 913 (8th Cir.2002); *United States v. Dingle,* 114 F.3d 307, 313 (D.C.Cir.1997). Kelly's protestation that the additional rocks were unforeseeable and outside the scope of the "jointly undertaken criminal activity" is ir-

relevant, because scope and forseeability are concerns only when a defendant is sentenced based on the conduct of others. *See* U.S.S.G. § 1B1.3 & comment. (n.2); *United States v. Guerrero–Martinez,* 240 F.3d 637, 642 (7th Cir.2001); *United States v. Velasquez,* 67 F.3d 650, 654 (7th Cir. 1995); *United States v. Nieto,* 60 F.3d 1464, 1470 n. 4 (10th Cir.1995). Here, Kelly's sentence was based solely on the three-gram transaction in which he personally participated.

Kelly's final suggestion–that he is guilty of distributing only the first rock–seems to imply that the events outlined in the plea agreement comprise two separate distributions and that Kelly was involved only in the first. But Kelly offers no authority to support this argument, and we can safely say that the district court did not clearly err in viewing the events as a single distribution. Although two distributions may result when deliveries are made on different days, *see, e.g., United States v. Mc-Donald,* 692 F.2d 376 (5th Cir.1982) (two distributions where drugs were delivered several days apart), or are interrupted by significant intervening events, as where a seller must travel to another location to replenish his supply, *see, e.g., United States v. Weatherd,* 699 F.2d 959, 962 (8th Cir.1983) (two distributions where seller who feared foul play sold half of negotiated amount to buyer, then retrieved remaining amount from accomplice in nearby location and transferred it to buyer several minutes later), uninterrupted, closely timed transfers that involve the same participants and are made at the same place are treated as a single distribution. *See, e.g., United States v. Horton,* 601 F.2d 319, 325 (7th Cir.1979) (contemporaneous transfer of two packages of drugs was a single distribution even though packages had different end consumers); *United States v. Elliott,* 849 F.2d 886, 890 (4th Cir.1988) ("[m]ultiple acts of physical delivery which, though technically discrete, occur at essentially the same time, in the same place, and with the involvement of the same participants" must be considered a single distribution). *See also United States v. Palafox,* 764 F.2d 558, 563 (9th Cir.1985) (when multiple steps lead to the same criminal undertaking only one punishment should be imposed). Accordingly, Kelly's sentence is AFFIRMED.